We're now going to move to Appeal 22-1685, Faccone v. Geraci. And we're going to begin with argument from the appellant, Mr. Dixon. If it may please the Court, good morning, Honors. My name is John Dixon. On behalf of the appellant, David Faccone, the Bankruptcy Court ruled that a certain annuity account is not exempt pursuant to the exemption statutes of the State of Illinois, and that decision should be overturned for the following reasons. First, this contract very obviously is an annuity, and our analysis should begin and end with the finding by the Illinois Department of Insurance that it is an annuity. The Illinois Insurance Code charges the Department of Insurance with deciding what's an annuity, what's a life insurance policy, what other forms of insurance can be sold in the State of Illinois. And this product is sold in the State of Illinois. It has passed that process. Rather than trying to figure out what the primary purpose of any specific contract is, we should rely upon the finding by the administrative agency that this actually is what the agency says it is, which is an annuity. The Illinois Supreme Court, in fact, does give deference to Department of Insurance findings, for example, cited in the briefing, Lawyer v. American Family, the 2002 case. The Department of Insurance is entitled to deference on this point. Mr. Dixon, if we were to find it in favor of your client, wouldn't anybody, everybody, before they filed for bankruptcy, do exactly this thing right here and shield all of their assets in Illinois from the bankruptcy proceeding and discharge all of their debts? I doubt it, because... To me, you'd have to be a total idiot not to. And what am I missing? There are lots of total idiots, apparently, because in the status quo, you could do that with whole-life life insurance with a cash value. You can dunk all of your cash assets into a whole-life policy, and it will sail right through bankruptcy. Those cases never come before the Seventh Circuit because it's so not even disputable that you can have an unlimited exemption for life insurance policies. But, counsel, for whole-life policies, though, going back to Judge Kirsch's point, there are significant financial penalties and disadvantages of withdrawing. Here, it appears that the debtor, Mr. Falcone... Is it Falcone? Falcone. Falcone. That the policy or the annuity of the account allows him to withdraw amounts whenever he wants, to redesignate beneficiaries, to basically have full control over the account. And there's just kind of a... He lists his wife as someone that's a beneficiary upon his death. But other than that, it appears like just any other investment account. So it seems like there's a significant difference between those other products like whole-life that you mentioned and an account like this. And so I guess I'd share Judge Kirsch's concerns that if we allow these types of financial instruments to be exempt, wouldn't that just provide a huge loophole in the system whereby debtors can escape any sort of judgment or get things exempt out of bankruptcy? Okay. So to directly answer your question, the difference between a mere investment account and an annuity such as the one in this case was set forth in SEC v. Balick, which is in the briefing, as approved by the Illinois Supreme Court in Van Dyck v. White. And the general gist of both of those cases is the difference between an investment account and an annuity is that the insurer has some risk. The insurer has to do some sort of underwriting. And that is present here. The insurer is assuming risk by offering this product with a guaranteed minimum withdrawal amount. That's one of the riders to the policy. That's what makes it an annuity, and that's why the Illinois Department of Insurance has approved it as an annuity, because if it were just merely an investment account, then this would not be governed by the laws of the state of Illinois. It would be governed under federal law. But to get to the second point about this possibly being a windfall, there are other safeguards in place. The penultimate paragraph of Section 12-1001 provides one of those safeguards, which is any transmutation or conversion of non-exempt property to exempt with the actual intent to defraud your creditors is not going to be exempt in any proceeding. And also any conversion of property from non-exempt to exempt within six months of the filing of a bankruptcy petition is presumed to be not exempt under bankruptcy laws. So Illinois, in drafting this statute, they've imposed as many safeguards as they want. It's not as if there weren't any safeguards whatsoever. The legislature made a conscious choice to say, this is going to be our safeguard. And I don't think it's the province of our trial-level course to say, did you really mean that? Because they put it out there in black and white. The only protection that the General Assembly wanted to have there is a protection against actual intent to defraud creditors or the presumption within six months of bankruptcy. And even further evidence on that point is the circumstances of the enactment of the exemption scheme. When Illinois opted out of the federal bankruptcy exemptions, the federal bankruptcy exemption had an $8,000 cap on insurance-related products that would be exempt from your creditors. Illinois said, we're not going to have a cap whatsoever. They didn't put a cap in this statute. So that reflects the intention of Illinois for this to be an unlimited exemption. So while people may scratch their head and say, did you really mean that, they very obviously did. And there's even further evidence about the Illinois General Assembly's intention to make this exemption quite broad, which is they imported this from the exemption that was contained in the Illinois Insurance Code. And as is discussed in the briefing, the Illinois General Assembly pulled out even more of the safeguards that were present in the insurance code exemption in drafting section 12-1001. So very clearly, the Illinois General Assembly intended for this to be what it is, which is an unlimited exemption for annuities if they're payable to the proper people, which is a spouse and dependents and, I guess, trusts that name spouses and dependents as beneficiaries. And so let's talk about that. So talk about that language, going back to the statute, the language payable to a wife or husband of the insured. Can you set forth your best arguments as to why this particular contract would satisfy that provision? Sure. So as a preliminary point, we have to understand that for this exemption to be triggered, we're talking about a debtor's interest in an annuity product. Section 12-1001F at the very top. So everybody jumps down to subsection F. But at the very top, it provides that the following personal property owned by the debtor is exempt from judgment, attachment, or distress. And then subsection F provides the exemption we're talking about. So we know from the very get-go that the debtor is going to have an ownership interest in this property, a present ownership interest. Otherwise, the exemption wouldn't apply, and it wouldn't even be subject to the bankruptcy estate. So the question is, how much of an ownership interest can he have? And the answer is in the statute. As much as you need. The ownership interest of the debtor is exempt if it meets subsection F, which is it's an annuity payable to the spouse of the debtor or to his dependents under certain situations. The fact that he can do with it what he would during his lifetime is neither here nor there for purposes of this statute. Would you like to reserve the remainder of your time? Yes, thank you. Thank you, Mr. Dixon. We'll now move to Mr. Curtis on behalf of the appellee. Thank you. Good morning, Your Honors. I'm Nathan Curtis on behalf of Doris Dracey and arguing for both appellees. There are two important things about the statute that are dispositive. The first is the fact that the statute uses the term insured and only the term insured. It doesn't use annuitant. It doesn't use account holder. It doesn't use anything other than insured. This clearly shows that the intent was for it to apply to accounts that are related to insurance. The fact that, as counsel indicated, 1001F was derived from 238A of the insurance code is further evidence of this. The insurance code only used the word insured. Elsewhere in the Illinois insurance code, they did use terms such as annuitant, account holder. In this statute or in 238A, they chose to solely use the word insured, and the legislature copied that language when enacting 101F. The second thing that is dispositive, as Your Honor indicated, is the phrase payable because of the death of the insured. And there's no argument that Mr. Ficone's wife is the beneficiary of the account. However, the fact that she's the beneficiary is incidental. That doesn't make it payable to her. When you have an account that is payable because of the death, it's payable, well, it's just that. It's payable because of the death of the owner of the account. It doesn't allow the account owner to freely do whatever he wants with the account at this time. Until he passes away, Mr. Ficone can do whatever he wants with the account, whatever he wants with the proceeds, et cetera. Counsel, what if the contract that he purchased didn't allow him to do that? What if the contract that he purchased said only his wife would have the right to make any withdrawals or to otherwise control the allocation of assets within the account? Would that make a difference? I don't think it would necessarily make a difference, Your Honor, simply because, again, this account is not related to insurance, and that's been stipulated by the parties. There's no insurance proceeds. And so how do you explain the language? I mean, if you look at the statute, the net cash value of any or all life insurance and endowment policies and annuity contracts? Your Honor, there are accounts that are life insurance annuities. You can't have life insurance proceeds in an annuity. You could have life insurance policies in an annuity. The purpose of the account was to protect insurance proceeds and the cash value of insurance. And Mr. Ficone is suggesting that that be dramatically extended, and as Your Honor has indicated, there would really be a slippery slope as far as whether or not someone could funnel money into an annuity, wait the six months, and then file bankruptcy. That cannot be what the intention of the legislature was to allow someone to, for example, win a million dollars in the lottery, put that money into an annuity, wait six months, and file bankruptcy to discharge $30,000 in debt. That's essentially what Mr. Ficone is asking this court to do. And if Your Honors don't have any further questions, I will stand on my brief. Thank you very much. Thank you, Mr. Curtis. We'll now go back to Mr. Dixon for rebuttal argument. Thank you again. I will address counsel's two points in reverse order. First, the proposition that an account has to be payable only to the spouse and that the insured can't retain any interest in it during his lifetime, that is contrary to the statute. And again, the preamble language that we're talking about personal property owned by the debtor, so he owns it, but also at the very bottom of subsection F, it says that this property is exempt, quote, whether the power to change the beneficiary is reserved to the insured or not. So the statute contemplates that the insured or the purchaser or the owner of the annuity in bankruptcy is going to have control over this account and this contract during his lifetime. Now, going back to the question and the statement which counsel made that this exemption only applies to insurance, and that's just simply not true. The Illinois Insurance Code says that annuities are insurance, and from a simple economic point of view, annuities are insurance. They are the opposite side to the coin of life insurance. Life insurance is a wager that you're going to die young, and if you pay your premiums and you die young, the insured loses and you win. An annuity is the opposite side to that coin where it's a wager that you're going to die old and you're going to live long enough that you're going to get back more money than the premiums that you pay. Annuities are insurance. They're just not life insurance. They're the opposite side of the coin to life insurance. And going back to the fundamental purpose of this exemption, it's to provide for your spouse and your dependents when you pass away, and that's what this account does. When David Facone passes away, the proceeds of this account are going to be used to support his wife, Janice. Maybe. That's the problem, right? That's the same maybe with cash value life insurance too. But the Illinois General Assembly has basically stated, we want you to still have that option to support your spouse because we think that that's a valuable goal, and it's more valuable than your creditors getting what they believe is due to them. Thank you. Thank you, Mr. Dixon. Thank you as well, Mr. Curtis. The case will be taken under advisement.